MILDRED WALLACE, by Next Friend, ERNEST J. KREDER, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, Appellant.—77 S. W. (2d) 1011.

Division Two, January 7, 1935.

*Mayer, Conkling & Sprague* for appellant.

*Shultz & Owen* for respondent.

COOLEY, C.—Plaintiff, widow of Harry Wallace, deceased, sued to recover the statutory $10,000 penalty for the death of her husband, alleged to have been caused by the negligence of the defendant. Upon trial there was a verdict for the defendant. The circuit court sustained plaintiff's motion for new trial and from that order the defendant appealed.

Defendant operates a passenger bus transportation system in St. Joseph, Missouri. In the afternoon of October 7, 1930, the deceased, Harry Wallace, with two other young men, was driving northward in an old Ford automobile on Twelfth Street in St. Joseph, and crashed into the side of one of defendant's busses in the intersection of Francis and Twelfth Streets. He received injuries from which he died shortly afterwards. Francis Street runs east and west, Twelfth Street north and south, intersecting at right angles. Francis Street is fifty feet wide between property lines and twenty-nine and a half feet wide from curb to curb. Twelfth Street is sixty feet wide between property lines and about thirty-five and a half feet wide from curb to curb. Defendant's bus was going east in Francis Street. The deceased, as stated, was driving north in Twelfth Street and ran into the bus when the latter was at about the center of the intersection, striking it on its right (south) side, just back of the front door. The front edge of the door was five or six feet from the front end of the bus. The accident happened in the daytime and there is no evidence indicating that there were vehicles or other objects in either street to interfere with the sight of either driver as they respectively approached the intersection. Witnesses said that deceased was driving "fast" or "very fast" but without estimating his speed in miles per hour. The evidence indicates that he was racing with another Ford car which was a short distance ahead of him, and which "shot through" the intersection ahead of the bus, and that he made no effort to slacken his speed or to swerve his car as he approached the point of collision. Estimates of the witnesses varied as to how far deceased's car was behind the other Ford when the latter passed through the intersection. Some placed it as close as twenty feet or so, others at points a hundred feet or more distant. The speed of the bus is not shown nor was there any evidence as to the distance in which it could have been stopped or its speed appreciably slackened. One of plaintiff's witnesses, a Mrs. Schellhorn, who was a passenger on the bus, seated in the third seat from the front on the south side, that from which deceased approached, saw the approaching car and saw it strike the bus. She said that the bus "slowed up" and "was stopping" before the collision occurred and "it stood still when the Ford hit, as far as I know." She was the only witness who testified as to whether or not the bus slackened speed before the collision or as to when it stopped. There was no evidence as to when the bus driver first applied his brakes. He was not called as a witness nor were either of the two young men who were with Wallace at the time, both of whom, though injured, survived the accident.

Plaintiff's case is based on the humanitarian doctrine. She alleged in her petition that defendant's driver saw or in the exercise of the highest degree of care could have seen Wallace in a place of

peril in time by the exercise of the highest degree of care to have avoided the collision by giving a warning signal or by slowing down or stopping the bus and negligently failed to do so. She submitted the case to the jury, however, on but one specification of negligence, viz.,—failure of the bus driver to ''check'' the speed of the bus.

Over plaintiff's objections defendant's counsel was permitted to state to the jury in his opening statement that he expected to prove that deceased and his two companions had been drinking intoxicating liquor the afternoon of the accident and were drunk when the accident occurred and to introduce evidence tending so to show. When that evidence was offered plaintiff objected to it on the ground that the case was based solely on the humanitarian doctrine and that whether or not the deceased had been at the time in question under the influence of liquor ''is not a defense in this case, . . . has no bearing on the case from any angle, and is therefore incompetent, irrelevant and immaterial.'' The objection was overruled and the evidence was admitted. The circuit court sustained plaintiff's motion for a new trial on the ground, stated of record, that it had erred in permitting defendant's counsel to make the statement to the jury above referred to and in admitting the evidence tending to show that deceased and his companions were intoxicated at the time of the accident.

Defendant contends that the plaintiff did not make out a case to go to the jury and that its request for a directed verdict should have been granted; a contention that would require serious consideration were it necessary to decide it. If by picking out and piecing together portions of the evidence most favorable to the plaintiff enough may be found to make a submissible case it is at best a very weak one. The verdict of the jury absolving defendant from the charge of negligence is clearly supported by ample evidence. And since the verdict was for the defendant and we have concluded that the learned trial court erred in setting it aside it is unnecessary to make a detailed statement and analysis of the evidence to determine whether or not it makes a submissible case.

█ I. We think the court was right in its first ruling admitting the evidence tending to show that deceased was intoxicated at the time of the accident and wrong in the later conclusion that such evidence had been erroneously admitted. Of course, since plaintiff sought recovery solely under the humanitarian rule neither her husband's intoxication, if a fact, nor his manifestly gross negligence constituted a defense to her action, nor did either absolve defendant from liability if it was negligent under that rule. The court properly so instructed the jury. But defendant contended that it had not been guilty of any negligence and that the accident had been caused solely by the deceased's own negligence or by his incapacity or recklessness resulting from his intoxication,—a condition not

then known to the bus driver and which he could not be expected to have anticipated. Until there was something which the bus driver observed or should have observed in the movement of the automobile or the actions and conduct of its driver to indicate that the automobile driver was oblivious or heedless of the proximity of the bus the bus driver had a right to presume that deceased would not drive heedlessly into the bus, which was in the intersection before the deceased reached it. And the jury may well have found that deceased would not have done so had he been sober and in full possession of his faculties. His intoxication and consequent unfitness to drive an automobile, if a fact, his heedlessness of danger to himself and others which often results from intoxication, these as well as the manner in which he actually did drive are facts and circumstances attending and entering into the happening of the collision, the event out of which the claimed cause of action arose, and tending to explain it. We think there can be no question but that they constituted parts of the *res gestae*. In 10 Ruling Case Law, page 982, section 164, we read that ''Facts as well as declarations may form parts of the *res gestae*, and be admissible for that reason,'' and that ''*Res gestae* include all those facts and circumstances which are incidents of a particular litigated act, and which are illustrative of such act and in contemplation of law are a part of the act itself.'' In 22 Corpus Juris, page 470, section 559, it is said: ''Facts or circumstances attendant upon the main fact in issue may be shown as part of the *res gestae*, although they involve no idea of action.''

In Griffin v. Wood (Conn.), 105 Atl. 354, the plaintiff's intestate, while walking in the highway, was killed by a motor car operated by the defendant, which approached the decedent from behind. The defendant claimed that his car was on the pavement where it belonged and that the decedent, who had been walking on the gravel beside the pavement, where he was not in danger, had suddenly stepped in front of the car and was struck in spite of defendant's efforts to stop; and he also claimed and offered evidence to prove that the decedent was intoxicated at the time. In holding the evidence of intoxication competent the court said: ''It is true . . . that the only importance of the alleged intoxication of the deceased was that, if true, it strengthened the probability of the defendant's claim that the plaintiff (deceased?) staggered out in front of the defendant's automobile. In that connection it was of great importance. . . .'' The court further said that intoxication was not negligence *per se* but in that case was an alleged fact which the defendant sought to prove because it tended to confirm his version of the accident.

In the instant case there was evidence from which the jury could well have found that the deceased could have seen the bus entering the intersection when he was yet far enough away to have easily

stopped before running into it and far enough away that the bus driver would have no reasonable grounds to think that he would not do so; also evidence, especially the testimony of Mrs. Schellhorn, from which it appears that he could easily have avoided striking the bus by swerving a little to his right and passing in front of it His intoxicated condition, if a fact, tends to explain his otherwise seemingly inexplicable conduct in driving headlong into the side of the bus and tends to sustain defendant's contention that deceased's own act was the sole cause of the accident.

II. Respondent contends that the court erred in giving defendant's Instruction L and should have sustained the motion for new trial on that ground also, though it did not do so. It is argued that said instruction does not correctly define the phrase "place of imminent peril" as used in the instructions and that it and defendant's Instruction K too narrowly restrict the danger zone. Said instructions read as follows:

"K. The court instructs the jury that the plaintiff seeks to recover damages in this case solely upon the ground that the operator of the motor bus mentioned in evidence saw, or, by the exercise of the highest degree of care, could have seen the deceased in a place of imminent peril in time, by the exercise of the highest degree of care, thereafter to have avoided the collision by checking the speed of the bus, but the operator of said bus negligently failed to do so. "You are therefore instructed that unless the plaintiff has shown by the preponderance of the credible evidence, to your reasonable satisfaction, that the operator of said bus saw, or, by the exercise of the highest degree of care, could have seen the deceased in a place of imminent peril in time, by the exercise of the highest degree of care, thereafter to have checked the speed of said bus, and that he negligently failed to do so, and that the collision directly resulted therefrom, then the plaintiff cannot recover and your verdict must be for the defendant, regardless of every other fact and circumstance in the case.

"L. By 'place of imminent peril,' as used in the instructions of the court, is not meant a place wherein there is just a mere bare possibility of an injury occurring. It means a place wherein there is certain danger."

Instruction K is but the converse of *plaintiff's* principal instruction which, on that question, required the jury to find that the deceased "was in a place of danger and imminent peril, and that the driver in charge of said bus, while operating it, saw, or by the exercise of the highest degree of care, could have seen that deceased, Harry Wallace, was in a place of danger and imminent peril, if you so find, in time, by the exercise of the highest degree of care, . . . to have avoided said accident, . . . by checking the speed of the bus, and failed to do so, and Harry Wallace was there-

by injured, and that by reason of said injury he died." If there was error in defendant's Instruction K, a question we need not consider, it was invited by plaintiff's instruction and furnishes her no ground of complaint. That proposition is too well settled to require further discussion or citation of authorities.

Instruction L does not purport to limit or to circumscribe the danger zone. It merely defines the meaning of the phrase "place of imminent peril" used in the instructions of both parties, and it does so in language essentially the same in meaning as has frequently been used by this court in defining the danger or "imminent peril" necessary to invoke the humanitarian rule. In State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 109, 253 S. W. 1014, 1019. we said: "The word 'peril' as used in the rule 'discovered peril.' 'humanitarian rule,' or 'last chance doctrine' means something more than a bare possibility of an injury occurring. . . . Through all the cases and the texts runs the idea of 'peril,' and in a broader sense than the mere possibility of injury."

In Ziegelmeier v. St. L. & Sub. Ry. Co., 330 Mo. 1013, 1017, 51 S. W. (2d) 1027, 1029, we said, quoting from concurring opinion of WHITE, J., in Banks v. Morris, 302 Mo. 254, 1. c. 273, 257 S. W. 482, 486, that imminent peril as the term is used in applying the humanitarian rule "does not mean remote, uncertain, contingent, nor (for the person affected) avoidable danger. It is imminent, immediately impending; it admits of no time for deliberation on the part of the person in peril between its appearance and the impending calamity." The Ziegelmeier case is similar to this in the facts relative to the plaintiff's situation and conduct.

In Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713, we reviewed prior decisions on this point and held that while, perhaps, it is not necessary in order to invoke the humanitarian rule that it appears that *injury* was *certain* to follow the negligent act complained of, it is necessary that the *peril* should have been imminent and certain

In Huckleberry v. Mo. Pac. Ry. Co., 324 Mo. 1025, 1034, 26 S. W (2d) 980, 983, it is said: "From a reading of the principal and concurring opinions in the Banks case (Banks v. Morris, supra). it seems clear that 'imminent peril,' that is certain, immediate and impending peril, is there meant." As we said in the Ridge case the Banks case formulates the constitutive elements of a cause of action under the humanitarian rule.

It is apparent from the foregoing that the definition of "place of imminent peril" contained in Instruction L is in accord with what we have held the term "imminent peril" to mean in cases such as this and that the instruction is not justly subject to the criticism leveled against it.

It is our conclusion that the learned circuit court erred in sustaining plaintiff's motion for new trial. Said order and action of

the court is reversed and the cause is remanded to the circuit court with directions to set aside the order sustaining the motion for new trial and to reinstate the verdict and enter judgment for defendant thereon. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.