HULDA LAMOREUX v. ST. LOUIS-SAN FRANCISCO RAILWAY CO., a Corporation, Appellant.—87 S. W. (2d) 640.

Division Two, November 5, 1935.

*E. T. Miller, Joseph W. Jamison, Henry S. Conrad, L. E. Durham, Hale Houts* and *I. M. Lee* for appellant.

1030

*Atwood, Wickersham & Chilcott* and *E. H. Gamble* for respondent.

1032

WESTHUES, C.—This case was certified to this court by the Kansas City Court of Appeals. In the majority opinion, written by Judge TRIMBLE, the case was reversed and remanded because the plaintiff's main instruction, by which the case was submitted to the jury under the humanitarian doctrine, was held to be erroneous. Another ground for reversal, as stated in the opinion, was the refusal of an instruction offered by the defendant. SHAIN, P. J., dissented from the main opinion and deemed it to be in conflict with an opinion of the St. Louis Court of Appeals in the case of Cain v. St. Louis Public Service Co., 59 S. W. (2d) 734, and also with certain decisions of this court. The case was, therefore, certified here.

For a full and complete statement of the facts we refer to the opinion of the Court of Appeals, reported in 73 S. W. (2d) 324. The plaintiff in the case, respondent here, was the widow of Clarence R. Lamoreux. She sued appellant railway company, defendant below, for damages resulting from the death of her husband.

The petition contained a number of assignments of primary negligence, but at the close of the evidence the case was submitted to the jury solely under the humanitarian doctrine. Deceased was a coach cleaner employed in the terminal yards at Kansas City, Missouri. On April 28, 1927, at about four-thirty P. M., having finished his day's work, he started from the south coach yard to the north coach yard. Between these yards were located a number of parallel tracks, making up a part of the railway yards. It had been the general practice for employees of the yards to cross over these tracks either on cinder paths or on a board walk. Deceased attempted to cross the tracks about sixty feet east of the board walk. At the same time a train, consisting of a switch engine and seventeen cars, was traveling west through the yards at a speed of from ten to fifteen miles per hour. Deceased was struck by the engine and instantly killed.

Plaintiff's evidence in substance was, that deceased fell upon the track between eighty and one hundred feet ahead of the train, and although he attempted to get up he was unable to do so before the train struck him. The evidence further tended to show that the train did not slacken its speed until after deceased was struck. There was evidence that by an emergency application of the brakes such a train could have been stopped within about ten feet. The evidence on both sides was to the effect that deceased was running while crossing the tracks.

Defendant offered evidence that deceased fell upon the track not to exceed five or six feet ahead of the engine. A number of witnesses testified that deceased was struck just as he stepped upon the track. All of these witnesses were in accord that in their opinion deceased saw the on-coming train and attempted to cross the track ahead of it.

Bowman, a switchman, was riding on the front end of the engine. He testified in part as follows:

"Q. You say he was running when you saw him first? A. Yes, sir.

"Q. Now, what, if anything—did he continue to get closer to your track? A Yes, he kept on coming over. At first I didn't think he would try to cross, but when he kept on coming over there, I yelled that way at him and went that way at him (demonstrating).

"Q. What did he do then? A. He just kind of glanced that way and redoubled his efforts and when I realized that he was really going to try to cross, I jumped down on the running board and grabbed the hand rail that I had been sitting on and reached out—I saw that he was a small man, and when I saw that he couldn't cross in front of the engine without getting hit, I figured to either jerk him up on the running board with me or to throw him to the inside of the curve.

1034

"Q. You were going to do something to prevent his being injured or killed? A. Yes, sir."

The points briefed by appellant in this court only pertain to the instructions given and refused. Appellant's contention that the demurrer to the evidence, offered at the close of the whole case, should have been given, is without merit. Under respondent's evidence deceased was placed in a position of peril when he fell upon the track eighty to one hundred feet ahead of the train, which was running at a speed of from ten to fifteen miles per hour. There was evidence that he struggled to get up but for some reason was unable to do so. The switchman, Bowman, was at the front end of the engine for the purpose of keeping a lookout. There was evidence that the train could have been stopped in time to have saved deceased. No citation of authority is needed to sustain the contention that under these facts respondent was entitled to have her case submitted to a jury under the humanitarian rule.

The instruction complained of, which submitted the case to the jury, read as follows:

" 'The court instructs the jury that if the jury find and believe from the evidence that Clarence R. Lamoreux was killed on or about the 26th day of April, 1927, and that at the time of his death, plaintiff was his lawfully wedded wife and that deceased was in the employ of the Kansas City Terminal Railway Company and was crossing the tracks of the said Kansas City Terminal Railway Company at the time and place referred to, in evidence and that it was the custom and practice of many years' standing for employees of the Kansas City Terminal Railway Company to be about, upon, crossing and recrossing said tracks at said place and that defendant and its said agents, servants and employees knew or by the exercise of ordinary care could and would have known of said custom and that *as said deceased was attempting to cross said tracks* defendant was operating the switch engine and train of cars referred to in evidence thereon and thereover and that *as said deceased approached and attempted to cross the track* referred to in evidence *he was in a place and position of imminent danger and peril* from the approach and movement of said engine and train of cars *and that defendant,* its agents, servants and employees in charge of said switch engine and train of cars, *knew* or by the exercise of ordinary care *could and would have known of deceased's said position of danger and peril,* if any, *in time thereafter* by the exercise of ordinary care and by use of the means at hand and with reasonable safety to said engine, train of cars and those upon it, *to have stopped the same or slackened the speed thereof before striking the said Clarence R. Lamoreux* and *thereby could have prevented killing him,* if you so find, *and that they failed to use ordinary care so to do,* and *were thereby guilty of negligence* if you so find, and that as a direct

result thereof said switch engine struck said Clarence R. Lamoreux and he was thereby killed, if you so find, *then your verdict must be for plaintiff* and against the defendant *and this is the law* under this instruction even though the jury should further find and believe from the evidence that said Clarence R. Lamoreux was *guilty of negligence before* or at the time of getting into such position of danger and peril.' (Italics supplied.)''

The Court of Appeals, in the majority opinion, correctly disposed of this issue. It held the instruction to be erroneous under the facts proven in the case. Under plaintiff's theory deceased was not in a position of peril until he fell upon the track. A man running across a track eighty to one hundred feet ahead of, and fully cognizant of an on-coming train, going at a speed of from ten to fifteen miles per hour, is not in a position of peril. Banks v. Morse & Co., 302 Mo. 254, 257 S. W. 482, concurring opinion of Judge WHITE. The instruction included the approach to the track within the peril or imminent danger zone, and was, therefore, erroneous. Under this instruction the jury was authorized to find that the operators of the train should have stopped their train to permit deceased to pass over the track ahead of the train, when as a matter of fact the operators of the train, under the law, were authorized to assume that deceased would stop for the train. Many of the cases cited by respondent involve collisions of motor vehicles, but the facts were materially different from the facts in the present case. The Cain case, supra, referred to in Judge SHAIN's dissenting opinion, discloses that deceased in that case was oblivious of the on-coming street car of which the operators of the street car had notice, and that issue was submitted to the jury by the instructions. In the case before us deceased was fully aware of the presence of the train. In like manner does this case differ from the cases of Gann v. Chicago, R. I. & P. Railroad Co., 319 Mo. 214, 6 S. W. (2d) 39, and Collins v. Beckmann, 79 S. W. (2d) 1052, cited by respondent. In those cases obliviousness was a material element. Note what this court said in the Collins case:

''Plaintiff's car was moving toward the path of defendant's car, and from the evidence the jury may have found that she and her husband were oblivious of the near and dangerous approach of the latter, and that defendant, in the exercise of due care, so observed or should have so observed.''

Respondent's instruction in this case should have been so worded that the jury would not have considered deceased in a position of peril until he fell upon the track. As the majority opinion of the Court of Appeals well said, ''It was the fall and not the approach to the track that brought the deceased into peril.''

In this case the question of warning was not present, for the apparent reason that respondent's evidence shows deceased saw the train

coming. We desire to quote with approval the following, concerning plaintiff's main instruction, taken from the majority opinion of the Court of Appeals:

"If it be true that deceased attempted to cross and fell on the track only 5 or 6 feet ahead of the engine, we cannot see how a case could be made for the plaintiff under the humanitarian rule. But under the instruction as drawn, the jury might well have believed that was what he did, yet since they had been told in general terms that if they believed he was in imminent danger 'as he approached and attempted to cross,' the jury could regard that as a part of the time in which the train operatives should have known of his danger and acted to save him, when there was nothing in deceased's approach to indicate to the operatives that he did not intend to stop before going on the track. The instruction is, on principle, infected with the same vice as the one held erroneous in Haines v. Bridges Asphalt Paving Co. (Mo.), 55 S. W. (2d) 431, 434. That instruction was held erroneous because it assumed it was the duty of the operator to have discovered deceased's peril. The instruction in the case at bar assumed, or at least allowed the jury to assume, that it was the train operatives' duty to discover or realize the *peril* before it was in fact imminent and *before* such imminent peril was manifest."

In our original opinion, filed herein, we held that the trial court also erred in refusing to give Instruction D-1, as requested by appellant. In the motion for rehearing our attention was called to the fact that the trial court gave an instruction, numbered F, at appellant's request, covering the same subject matter as contained in Instruction D-1. We are of the opinion that respondent is correct in that contention. By Instruction No. D-1, the jury were told in substance that if the deceased saw the train approaching and undertook to cross the track immediately in front of the engine then their verdict should be for the defendant. Instruction F, given by the court, reads as follows:

" 'The court instructs the jury that if you believe and find from the evidence that the deceased went upon the railroad track immediately in front of the on-coming train and when the train was so close to the deceased that the employees in charge of the same could not, by the exercise of ordinary care on their part, either stop the train or slacken the speed and thereby have prevented the injury and death of the deceased, then your verdict must be in favor of the defendant.' "

The Court of Appeals in its majority opinion held that the refusal of the trial court to give appellant's Instruction D-1 "accentuated the error we have discussed in plaintiff's instruction number one." [See 73 S. W. (2d) 324, l. c. 332 (5).] On a retrial, if respondent's case be submitted to a jury by instructions in conformity with this

opinion, the error contained in Instruction No. 1, referred to by the Court of Appeals and in this opinion, will not be in the case.

On rehearing respondent has referred to the case of Wise v. Chicago, R. I. & P. Ry. Co., 335 Mo. 1168, 76 S. W. (2d) 118. The contention is made that our ruling, holding respondent's Instruction No. 1 to be erroneous, is in conflict with the opinion in the Wise case. The facts in the Wise case, as in other cases cited by respondent, differed from the issues and facts in this case in that the elements of obliviousness on the part of the party injured and the failure to warn were present in those cases. These elements were not present in the case at bar.

The motion for rehearing is, therefore, overruled and the judgment of the circuit court is hereby reversed and the cause remanded for a new trial. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion of the court. All the judges concur.