ROMIE FLASPOLER, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION, Appellant.—151 S. W. (2d) 467.

Kansas City Court of Appeals. May 26, 1941.

*Joe Levin* and *Chas. N. Sadler* for respondent.

*Charles L. Carr* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

SHAIN, P. J.—In this action the plaintiff had judgment in the circuit court for damages for personal injury alleged to have been caused by the defendant's street car being negligently operated by its employees so as to cause said street car to come into collision with a truck in which plaintiff was riding.

The trial was by jury resulting in verdict for plaintiff. Judgment was in accordance and defendant duly appealed. We will continue to refer to respondent as plaintiff and to appellant as defendant.

There was evidence in the trial that permitted the plaintiff to submit his case upon the humanitarian rule. The only question presented for review in this case is as to whether or not plaintiff's Instruction No. 1, submitting case under the humanitarian rule, is in error.

The defendant makes contention as follows:

"The court below erred in giving, over the objection and exception of defendant, Plaintiff's Instruction '1' which covered the case and called for a verdict in plaintiff's favor, on the theory of humanitarian negligence, for the reason that said instruction is prejudicially and reversibly erroneous as a matter of law in that it erroneously extended the danger zone and imposed upon defendant a legally nonexistent duty by requiring defendant's operator to take steps to avoid the collision when he saw or could have seen that the truck in which plaintiff was riding was 'upon, or approaching and in close proximity to the track' and was 'in, or approaching and in close proximity to, a position of imminent peril,' and authorized a verdict for plaintiff if he did not do so. The law is that defendant does not owe any duty to act to avoid the collision until plaintiff is actually in peril, not when he is merely approaching it, and the Supreme Court has held that an instruction of the kind here involved is reversibly erroneous."

The instruction complained of is as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about June 21, 1938, the plaintiff was riding in an automobile truck, being driven in a westerly direction on the North side of East 31st Street, in Kansas City, Jackson County, Missouri, approaching Tracy Avenue; and if you further find that when said truck reached the intersection of said East 31st Street and Tracy Avenue (if you find it did reach said place), the driver turned said truck in a southerly direction across said East 31st Street for the purpose of going south on said Tracy Avenue; and if you further find at the time said truck turned in a southerly direction (if you find it did so turn) a street car being operated by defendant,

its agent and servant, *was approaching* said intersection from the west traveling in an easterly direction upon the south or eastbound car track; and if you further find that said truck was in a position of imminent peril, that is, in a position where there was immediate danger of being struck by said street car unless the speed of said street car was slackened, or the said street car was stopped; and if you further find that the operator of said street car saw or by the exercise of ordinary care could have seen said truck *being driven upon, or approaching and in close proximity to the track upon which said street car was traveling,* if so, and saw or by the exercise of ordinary care could have seen that it was the apparent intention of the driver of said truck to cross said street car track in front of said street car (if you find such fact) and saw, or by the exercise of ordinary care, *could have seen that said truck was in, or approaching and in close proximity to, a position of imminent peril of a collision* between said street car and said truck unless the speed of said street car was slackened, or the car stopped (if you find it was in or *approaching such position*), and saw or by the exercise of ordinary care, could have seen that the driver of said truck was apparently oblivious to such peril (if you find such fact), or was unable to extricate said truck and himself therefrom in time to prevent a collision (if you find such peril existed) in time thereafter, by the exercise of ordinary care, with the appliances then upon said street car, at the rate of speed it was then traveling, with safety to said street car and the occupants thereof, and under the conditions then and there existing as shown by the evidence, to have stopped said street car, or slackened the speed thereof, before it struck said truck (if you find it did strike same); and if you further find that the operator of said street car could by doing *either,* or *both,* of said acts have prevented any injury to plaintiff (if you find he was injured) and negligently failed to do so, then under such circumstances you are instructed that your verdict should be in favor of plaintiff and against defendant, and this is true even though you may believe the driver of said truck was guilty of negligence himself in getting said truck in such position.'' (Italics ours.)

The humanitarian rule in Missouri for many years was given a liberal interpretation and application, wherein the highest regard was given to human life and wherein the danger zone was broader than the immediate spot of disasterous contact. However, the advent of rapid transit has brought a new element into the premises that were the basis of former conclusions. As changed conditions intervened, the element of human progress is brought into the problem and a greater burden is placed upon human beings to look out for their own safety. Such situations, when brought before the courts of Missouri for review, have tended toward a departure from earlier

declarations of our courts, not only as to the humanitarian rule but as to questions of prime and contributive negligence as well.

When our railroads made advent, legislative enactment caused the erection of danger signals at crossings and courts imposed duty to "stop, look, and listen." While not here in point, it is interesting to note that while as to those meeting death there is not sufficient data from which to draw conclusions, it so happens that the record showing, as to those only receiving injury, is to the effect that they *stopped, looked* and *listened.* Thus it is shown that the court imposed duty has not been in vain.

Prior to the decision in Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S. W. (2d) 961, there is shown, by dissenting opinion and otherwise, a tendency away from the liberal construction that had been adhered to regarding the humanitarian rule.

In an instruction in the Buehler case are words as follows: "approaching and in the aforesaid position of imminent peril." Commenting on the aforesaid language, the court in its opinion in the Buehler case, l. c. 158-9, says:

"The writer ventures to renew here criticisms recently made of a similar instruction in Perkins v. Terminal Railroad Assn., 340 Mo. 868, 886, 896, 102 S. W. (2d) 915, 924, 930, this because it was thought by some of the judges of this court that the question was not raised by the appellant in that case. It is squarely raised here, and the instruction falls within the condemnation of both the dissenting opinions in the Perkins case. It undoubtedly predicates liability on the failure of appellant's truck driver to avert the collision if he could have done so after seeing, or being bound in the exercise of the highest degree of care to see, the Ford coupe crossing Mill Street, *approaching* and in a position of imminent peril. That word approaching meant something in the instruction. According to its ordinary meaning it indefinitely extended the field within which vigilance under the humanitarian doctrine was exacted. But the law is that that duty does not arise *until* a situation of peril arises." (Italics theirs.)

In May, 1939, this court handed down an opinion in Blunk v. Snider, 129 S. W. (2d) 1075. A humanitarian instruction in this case had language as follows:

". . . if you further find that at said time and place plaintiff . . . *was in or coming into* a position of peril of being struck by defendant's automobile (if you so find) and was oblivious of such peril (if so) and if you further find that defendant saw or by the exercise of the highest degree of care could have seen the plaintiff *in or immediately coming into* a position of being struck and injured by defendant's automobile (if you so find), and apparently oblivious of any impending danger." (Italics theirs.)

This court held in the above case that the above language was not in error.

What was said by the court, *supra,* in the Buehler opinion was immediately preceded by language as follows: "The petition does not plead, and the instruction does not hypothesize, obliviousness or inability to extricate himself on the part of respondent."

As the instruction in the case of Blunk v. Snider, and the pleadings in that case so completely set forth as to obliviousness, we erroneously concluded that obliviousness considered in connection with *"in or immediately coming into"* distinguished the case from the Buehler case. Our opinion in the Buehler case was quashed. [See State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. (2d) 527.]

The plaintiff in the brief filed, cites a long line of Missouri cases that sustain plaintiff's position. However, all of the cases antidate the opinions in the Buehler v. Blunk, and State ex rel. v. Shain, *supra,* cases, and we cannot accept same as the latest utterances of the Supreme Court of Missouri on the question involved herein.

The late utterances of our Supreme Court have drawn a somewhat dim but magic circle around the word "in" and, as one having had experience, we are prone to look with disfavor on such language as *"approaching"* or *"immediately coming into,"* even when used in connection with the term "oblivious."

Expressions of private opinion in judicial opinions are sometimes interesting and even instructive, but are not decisive of the issue. Such being the case, we go directly to the point and speak judicially.

In the light of the utterances in the late cases commented upon, *supra,* we conclude that the language expressed in the italicized words of the instruction complained of unlawfully extends the danger zone and constitutes reversible error.

Judgment reversed and cause remanded. All concur.