LYLE ROBARDS, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, APELLANT.—177 S. W. (2d) 709.

Kansas City Court of Appeals. January 31, 1943.

*Charles L. Carr* and *Virgil Yates* for appellant.

*Lancie L. Watts* for respondent.

BLAND, J.—This is an action for damages to an automobile trailer. There was a verdict and judgment in favor of plaintiff in the sum of $467.95. Defendant has appealed.

The suit grows out of a collision between an automobile trailer, owned and operated by plaintiff, and one of defendant's street cars. The collision occurred on May 28, 1936, about the hour of 6:30 A. M., at the intersection of Fifteenth Street and Indiana Avenue, in Kansas City.

Plaintiff's evidence tends to show that Fifteenth Street is an east and west street about eighty feet wide from curb to curb, having a

double street car line thereon, the street car tracks being just a little closer to the north curb of Fifteenth Street than they are to the south curb; that Indiana Avenue is a north and south street, thirty-six feet, six inches wide from curb to curb south of Fifteenth Street and about twenty-eight feet, four inches wide north of Fifteenth Street from curb to curb; that Fifteenth Street is level as it crosses Indiana Avenue; that the distance between the eastbound and westbound car tracks is five feet, three-fourths inches and, between the rails of each car track, five feet. There is a stop sign at the southeast corner of Fifteenth Street and Indiana Avenue located nineteen feet south of the south curb line of Fifteenth Street. At the southeast corner of Fifteenth Street and Indiana Avenue there is a building extending to the corner of the intersection.

Plaintiff's evidence further shows that his tractor was ten feet and his trailer was twenty-two feet in length, so that the over-all length of the two vehicles was thirty-two feet; that he was engaged in hauling freight from St. Louis to Kansas City; that he reached Fifteenth Street and Indiana Avenue with his tractor and trailer about 6:30 A. M.; that it was daylight and a perfectly clear morning; that, as he approached Fifteenth Street from the south on Indiana Avenue, he stopped at the stop sign; that when he stopped he was sitting in the cab of his tractor about eleven or twelve feet back, or south of the south curb line of Fifteenth Street, the front end of his tractor being about five feet south of the curb line; that at this point he looked both ways on Fifteenth Street for traffic; that he observed the street car, that afterwards struck his trailer, approaching from the east, proceeding westward, on the westbound or north street car track on Fifteenth Street, traveling at the rate of speed of from twenty-five to thirty miles per hour. After stopping plaintiff started up toward the intersection. At that time the street car was a block away which, according to the evidence, was 271 feet east of Indiana Avenue. After entering the intersection and crossing Fifteenth Street he was traveling on the east side thereof and in low gear. He next observed the street car when it was approximately 135½ feet east of Indiana Avenue. At that time the front of his tractor was practically on the south rail of the south street car tracks and was traveling at the rate of speed of about five to seven miles per hour, and the street car had not slackened its speed; that from the time that he started up until the time that he reached the car tracks he gradually increased his speed; that he then proceeded to go on across the street and arrived at a place almost across Fifteenth Street when the collision occurred. The street car and the trailer collided, the impact being approximately in the middle of the trailer.

Plaintiff stated that going at the rate of speed of seven miles per hour, under the conditions then existing, he could have stopped his tractor, with safety to himself and the load, within a distance of about

seven feet.   On cross-examination he stated that he saw and was conscious of the approaching street car, at no change in speed, at all times, and that he "thought he had plenty of time to beat him (the motorman) across."

Plaintiff's witness, Burt, testified that he was driving another trailer outfit immediately behind that of the plaintiff; that he sat in his cab situated on the south side of Fifteenth Street and watched plaintiff's trailer outfit cross Fifteenth Street and the street approaching the intersection; that he first saw the street car when it was eighty or ninety feet away; that he glanced at the intersection to see if it was going to be clear so that he would have time to get on across but, observing where plaintiff's outfit was, he again looked back at the street car, at which time the motorman appeared to be looking down at his controls; that the motorman then raised his head and he saw plaintiff's trailer outfit thirty or forty feet in front of him; that the motorman then let loose of the controls, turned around and ran back toward the center of the car, taking about three steps before the moment of the crash; that the street car continued at its normal rate of speed without slackening until it hit the trailer; that the collision raised the front end of the street car into the air; that there was a terrific crash and the trailer outfit and the street car stopped.

Plaintiff introduced an expert witness, who testified that, under the facts and circumstances in question on the day of the collision, a street car going at the rate of speed of twenty-five miles per hour could have been stopped, in an emergency, within seventy-five to eighty feet.

Defendant's evidence tends to show that the street car in question was proceeding at the rate of speed of between eighteen and twenty miles per hour when the operator of the car first saw the trailer and tractor some ninety feet away; that the tractor and trailer were then coming into Fifteenth Street, from Indiana Avenue, at a speed of twelve to fifteen miles per hour; that when the operator saw that plaintiff was coming on across the street he rang the bell, applied the air and slowed the car down; that at that time plaintiff slowed his trailer and tractor up a bit and he, the operator, thought that plaintiff meant for him to go ahead of plaintiff, but that the latter continued on; that at that time the operator saw that plaintiff was not going to stop; that by that time the street car was about thirty-five feet from the intersection; that the operator then applied the air and threw the car in emergency; that immediately, thereafter, the trailer and the street car collided; that the motorman stepped back from the vestibule just before the collision; that the trailer and tractor had swerved in a northwesterly direction.   According to the operator of the street car the collision was with the lefthand side of the street car and slightly behind the front corner of the right-hand side of the

trailer. The collision caused the vestibule to be pulled off to the right-hand side or toward the north.

The operator of the street car testified that, under conditions existing on the day in question, the car that he was operating, could have been stopped in an emergency in the following number of feet: thirty miles per hour 175 to 200 feet; twenty-five miles per hour 125 to 150 feet; twenty miles per hour 100 to 125 feet; fifteen miles per hour ninety to ninety-five feet.

Defendant complains of error in the giving of the following instruction on the part of plaintiff:

"The court instructs the jury that if you believe from the evidence that on May 29, 1936, at about 6:30 A. M., the defendant, by its motorman operated a westbound street car on the north track of Fifteenth Street, and that as said street car approached the intersection of Fifteenth Street with Indiana Avenue, both in Kansas City, Missouri, plaintiff's trailer outfit was moving toward said tracks from the south side thereof, and if you further find that it would have been apparent to a reasonably careful motorman, under all the facts and circumstances, that plaintiff would likely drive upon said tracks and be struck by said street car if the motorman did not stop or slacken its speed, and that plaintiff's trailer outfit was in imminent peril of being so struck and damaged, if you so find, and that said motorman knew, or by the exercise of ordinary care on his part could have known thereof, when far enough away from the intersection, and in time thereafter, by using ordinary care and the means at hand, with safety to himself and the passengers on said street car, to have slackened the speed of said street car or stopped the same, if you so find, and thereby could have avoided the collision with and damages to plaintiff's trailer, if you so find, and that he failed so to do, and that as a direct result of his failure, if you find, said street car collided with said trailer outfit and the same was thereby damaged, if you so find, then your verdict must be for plaintiff Lyle Robards, and this is the law, and this is true even if you should also find and believe from the evidence that plaintiff Lyle Robards failed to exercise the highest degree of care in the operation of his said trailer outfit at said time and place".

Defendant says that the instruction broadens the danger zone, in that: "It does not limit imminent peril to the time at which plaintiff's tractor and trailer outfit was upon the track upon which the street car was approaching, or so near thereto that plaintiff was in a position where he could not extricate himself, but makes the duty of the motorman begin when plaintiff first entered the intersection."

In Smithers v. Barker, 111 S. W. (2d) 47, 53, the court said:

"Certainly when a person knowing of the near approach of an on-coming vehicle deliberately (with ability to stop) goes into its path, either defiantly or in an attempt to take the right of way or

'to beat it across' or otherwise acting to place all responsibility for avoiding contact upon the operator of such vehicle, the zone of his peril is very narrow and the duty of such operator to act does not commence until such person is actually in its path or so close to it that it is apparent (at the rate of speed and manner he is moving) that he will not stop before reaching it. [Lamoreux v. St. Louis-S. F. R. Co., 337 Mo. 1028, 87 S. W. (2d) 640; Wallace v. St. Joseph Ry. L. H. & P. Co., 336 Mo. 282, 77 S. W. (2d) 1011; Stanton v. Jones, 332 Mo. 631, 59 S. W. (2d) 648; McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633; Sullivan v. Atchison, T. & S. F. R. Co., 317 Mo. 996, 297 S. W. 945; State ex rel. Wabash R. Co. v. Bland, 313 Mo. 246, 281 S. W. 690.] This is because a person, who is not oblivious and has the ability to stop, is not in a position of any peril whatever (certainly not imminent peril) when he is merely moving toward the path of a moving vehicle, and he does not come into a position of imminent peril therefrom until he is directly in the path of such vehicle or so close thereto that he cannot stop short of its path".

The instruction in the case at bar permits the jury to find that plaintiff's trailer outfit was in imminent peril of being struck when it was at a point, moving toward the tracks, where it would *"likely"* be driven upon said tracks and be struck by said street car. We think, unquestionably, that this unduly enlarges the danger zone. In Huckleberry v. Missouri Pac. R. Co., 26 S. W. (2d) 980, 983, it is said: "From a reading of the principal and concurring opinions in the Banks case, it seems clear that 'imminent peril', that is, certain, immediate, and impending peril is there meant." [See, also, Wallace v. St. Jos. Ry. L. H. & P. Co., 77 S. W. (2d) 1011; Roach v. K. C. Publ. Serv. Co., 141 S. W (2d), 800, 802, 803, and cases cited therein.]

It has been held that the word "likely" is not equivalent to the words "reasonably certain"; that "reasonably certain" is a stronger expression than the word "likely". [Brown v. Forrester Nace Box Co., 243 S. W. 330, 331.] In order for a case of imminent peril to be made it is necessary that the peril, at least, be certain and imminent. The mere fact that plaintiff would likely drive upon the tracks was not sufficient to make his peril certain and imminent within the meaning of those terms as construed by the Supreme Court.

Plaintiff cites Trusty on "Constructing and Reviewing Instructions", pages 163, 164, 165; but there, the author was dealing in "reasonable appearances" to the operator of the vehicle as related to imminent peril. However, there are two elements involved in a humanitarian case where plaintiff is not oblivious of his peril (as here). (1) Plaintiff must prove facts and circumstances tending to show his inextricability, and (2) that the operator of the vehicle had notice of his situation in order to bring home knowledge to the latter of such fact. [Banks v. Morris, 257 S. W. 482.] It is in connection with the second condition that "reasonable appearances" has to do. In

other words, it was not sufficient for plaintiff, in this case, to show, in order to require action on the part of the operator, that it was reasonably apparent to the operator that he would *probably* or *likely* proceed in front of the street car, but that it was reasonably apparent to such operator that plaintiff was in certain danger because unable to extricate himself. [See cases last cited and Trusty on Constructing and Reviewing Instructions, p. 163.] It will be observed that in the instruction, at no place, has the jury found that plaintiff was in extricable peril at the time it required he operator to act. The humanitarian doctrine, as construed in this State, is very liberal to the injured party, but the courts have been careful not to extend the doctrine beyond reasonable bounds and, consequently, have steadfastly refused to approve instructions extending the danger zone, even in a slight degree. [See cases cited and Buehler v. Festus Merc. Co., 119 S. W. (2d) 961; State ex rel. Snider v. Shain, 137 S. W. (2d) 527, 529; Evans v. Farmers Elevator Co., 147 S. W. (2d) 593; Flaspoler v. K. C. Pub. Serv. Co., 151 S. W. (2d) 467.] We are of the opinion that the instruction was erroneous.

We have examined the cases of Kick v. Franklin, 137 S. W. (2d) 512, and Reiling v. Russell, 153 S. W. (2d) 6, cited by plaintiff and find them not in point. Plaintiff is in error in saying that his instruction is the same as that in the Kick case, with the exception, that the words "immediately coming into", a term used in that instruction, which was criticised by the Supreme Court, is omitted in his instruction. The court in that case held that the instruction was not reversibly erroneous even though it used the words quoted, *supra,* because the words "immediately coming into" appeared only in the first part of the instruction, whereas, the balance of the instruction did not impose any duty upon the defendant until after the plaintiff was actually in imminent peril. The instruction in the case at bar is not like that in the Kick's case, for the reason, that the word "likely" was not used in the instruction in that case, but the instruction, l. c. 515, required the jury to find that it would have been apparent to the engineer that plaintiff *"would* continue farther and drive upon said tracks and be struck", if the engineer did not take proper steps to avert the collision. (Italics ours.)

Defendant also contends that the instruction is erroneous by reason of the giving of the so-called "tail" of the instruction, reading as follows: "and this is the law, and this is true even if you should also find and believe from the evidence that plaintiff Lyle Robards failed to exercise the highest degree of care in the operation of his said trailer outfit at said time and place." In support of this contention defendant says that, this part of the instruction, is inconsistent with any proper "sole cause" instruction that it might have offered, and cites Smithers v. Barker, *supra*; Thomas v. Stott, 114 S. W. (2d) 142; Flaspoler v. K. C. Publ. Serv. Co., 170 S. W. (2d) 141. Under

the holding in Smithers v. Barker, *supra,* undoubtedly, the instruction, containing a tail of the kind appearing in the instruction before us, rendered it reversibly erroneous. But since the decision in that case, it has been so distinguished that, for all practical purposes, it is of little value as a precedent, so far as its holding in regard to the tail, standing alone, to an instruction of this kind is concerned. Recently the Supreme Court has pointed out, in effect, that if the jury find in plaintiff's favor all the essential elements of a humanitarian negligence case hypothecated in the *body* of a humanitarian instruction, plaintiff is entitled to a verdict even though he has failed to exercise care in getting in front of the vehicle that caused his injury, because of these essentials, or facts in the case, his negligence can only have been antecedent contributory negligence, which is not a defense. See Bowman v. Standard Oil Co. of Indiana et al., 169 S. W. (2d) 384, 388, where the court said, in reference to the Smithers' case: "The words in the conclusion: 'then', and 'this is true even though you may further find and believe', and 'aforesaid' unquestionably referred to what was said in the first part of the instruction; i. e., that portion which explicitly conditioned a plaintiff's verdict upon hypothesized negligence of defendants which directly and proximately contributed to plaintiff's injuries. Logically if defendants were thus negligent, it was impossible for the negligence, if any, of plaintiff or a third person to be the sole cause of plaintiff's injuries. Litigants, plaintiffs and defendants, are entitled to submit proper instructions covering the principles of law upon which they rely when supported by substantial evidence. Submissions are not made on an adversary's evidence defeating a recovery or a defense."

In distinguishing the Smithers case, the court said, l. c. 387: "Smithers v. Barker is to be read in the light of the issues before the court and the fact that Smithers' humanitarian instruction unduly extended the imminent peril zone, which latter fact might well cause such an instruction to infringe upon a defendant's sole cause of defense. We think subsequent rulings of this court demonstrate that had said humanitarian instruction correctly restricted the danger zone as limited in the preceding portion of that opinion there would have been no occasion for the observations here urged.

In view of the fact that the instruction in the case at bar unduly widens the danger zone the giving of the tail part of the instruction was erroneous under the Smithers and Bowman cases.

We have examined Crews v. K. C. Publ. Serv. Co., 111 S. W. (2d) 154; Melenson v. Howell, 130 S. W. (2d) 555 and Kick v. Franklin, 137 S. W. (2d) 512, cited by plaintiff, and find them not in point.

The judgment is reversed and the cause remanded. *Cave, J.,* concurs; *Shain, P. J.,* not sitting.