ROMIE FLASPOLER, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION, APPELLANT.—170 S. W. (2d) 141.

Kansas City Court of Appeals.   March 1, 1943.

*Charles L. Carr, Watson, Ess, Groner, Barnett & Whittaker, Carl E. Enggas* and *Douglas Stripp* for appellant.

1056

*Joe Levin* and *Chas. N. Sadler* for respondent.

SPERRY, C.—This is a damage suit growing out of personal injuries received by plaintiff when an ice truck in which he was riding, it being driven by plaintiff's agent and under his supervision, collided with a street car owned by defendant and being then operated by its employee an agent. Trial to a jury resulted in verdict and judgment for plaintiff. Defendant appeals.

Defendant contends that plaintiff's Instruction P-1 is erroneous. Said instruction is as follows:

"The court instructs the jury, that if you find and believe from the evidence that on or about June 21, 1938, the plaintiff was riding in an automobile truck being driven in a westerly direction on the north side of East 31st Street, in Kansas City, Jackson County, Missouri, approaching Tracy Avenue; and if you further find that when said truck reached the intersection of said East 31st Street and Tracy Avenue (if you find it did reach said place), the driver turned said truck in a southerly direction across said East 31st Street for the purpose of going south on said Tracy Avenue; and if you further find that at the time said truck turned in a southerly direction (if you find it did so turn) a street car being operated by defendant, its agent and servant, was approaching said intersection from the west traveling in an easterly direction upon the south or eastbound car track; and if you further find that said truck was in a position of imminent peril, that is, in a position where there was immediate danger of being struck by said street car unless the speed of said street car was slackened, or the said street car was stopped; [and if

you further find that the operator of said street car saw or by the exercise of ordinary care could have seen said truck being driven upon or approaching and in close proximity to the track] upon which said street car was traveling, if so, and saw or by the exercise of ordinary care could have seen that it was the apparent intention of the driver of said truck to cross said street car track in front of said street car (if you find such fact) and saw, or by the exercise of ordinary care, could have seen that said truck was in a position of imminent peril of a collision between said street car and said truck unless the speed of said street car was slackened, or the car stopped (if you find it was in such a position), and saw or by the exercise of ordinary care, could have seen that the driver of said truck was apparently oblivious to such peril (if you find such fact) or was unable to extricate said truck therefrom in time to prevent a collision (if you find such peril existed) in time thereafter, by the exercise of ordinary care, with the appliances then upon said street car, at the rate of speed it was then traveling, with safety to said street car and the occupants thereof, and under the conditions then and there existing as shown by the evidence, to have stopped said street car, or slackened the speed thereof, before it struck said truck (if you find it did strike same); and if you further find that the operator of said street car could by doing either or both of said acts, have prevented any injury to plaintiff (if you find he was injured), and negligently failed to do so, then under the circumstances you are instructed that your verdict should be in favor of plaintiff and against defendant, *and this is true even though you may believe the driver of said truck was guilty of negligence in getting said truck in such position.* (Given)'' (Italics ours.)

Plaintiff's evidence tended to prove that he delivered ice over a regular route in Kansas City and used a Ford 1½ ton truck in connection with that business; that on the day the collision occurred Clarence Hall, a friend of his, was driving said truck on said route and plaintiff was riding therein and delivering ice to his customers along said route; that Hall was not his employee but was a friend who drove the truck occasionally as a convenience for plaintiff and so that they could visit together while plaintiff performed his duties; that the truck, with Hall driving, traveled westward astride the north rail of the westbound street car track, on the 31st street, approaching the intersection of 31st and Tracy at a speed of about five miles per hour; that the truck was thus driven to a point west of the center line of Tracy, then turned south; that as the front wheels of the truck approached the south rail of defendant's eastbound track a bicycle rider, proceeding eastward along the south rail of said track at about ten miles per hour, caused Hall to slow the truck to about one mile per hour until the bicycle cleared the front of the truck; that after the bicycle cleared the speed of the truck was increased to about five miles per hour and defendant's street car, approaching from the

west along 31st Street, struck the truck on the rear wheel of said truck.. Plaintiff and Hall both testified that when they first saw the street car the truck was crossing the north rail of the eastbound street car track and that the car was then about 250 feet west of the intersection, traveling at twenty-five to thirty miles per hour; and plaintiff testified that he last saw it when it was about thirty feet west of said intersection at which time the front wheels of the truck were approaching the south rail of the eastbound track.

Defendant's evidence tended to prove that as its street car approached said intersection, traveling at about eight miles per hour, and when the front end of the car was five feet west of the west curb line of Tracy, plaintiff's truck, when it was twenty-five feet east of the intersection, suddenly cut out of a line of cars and traffic proceeding westward toward the intersection and, traveling at a speed of twenty-five miles per hour, proceeded southwestwardly into said intersection, turning to the south on Tracy; that the truck started its turn south on Tracy from a point twenty-five feet east of the intersection; that it did not proceed westward on 31st Street, astride the north rail of the westbound street car track until it reached or passed the center line of Tracy; and that it was driven into and against the left front of the vestibule of the street car. Defendant's evidence further was to the effect that when the truck left the line of traffic and started on its diagonal course across the intersection the operator of the street car applied the emergency brake and did all he could do to stop the street car; and that the accident was the result of plaintiff's driving into the street car despite defendant's efforts to avoid a collision.

Defendant first complains that the "tail" of said instruction, which we have italicised, is erroneous because it directs a verdict for plaintiff even though plaintiff's negligence, mentioned in said "tail," may have been the *sole* cause of the collision.

The record discloses that defendant would have been entitled to a sole cause instruction under its evidence and theory of the case; and the fact that none was requested is immaterial. [Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47; Thomas v. Stott, 114 S. W. (2d) 142, 144.]

The giving of such an instruction, in view of defendant's evidence in this case, was error.

Defendant also contends that said instruction "unlawfully extended the danger zone and imposed upon defendant a legally non-existent duty by requiring defendant's street car operator to act to avoid the collision when he saw or could have seen the truck in which plaintiff was riding being driven upon or approaching and in close proximity to the track." This contention is based upon that part of said instruction which we have inclosed in brackets. We condemned an instruction containing this identical language (and other and more objectionable language of a similar character) given in a former trial of

this case. [Flaspoler v. Kansas City Public Service Company, 151 S. W. (2d) 467, l. c. 469.] While the more objectionable language of the instruction considered in that case does not appear here, yet we there italicised language exactly similar to that here considered, and there used in the same context as it here appears. To say the least, such language is misleading and should not be used in a humanitarian instruction.

Defendant also criticises said instruction because, it is said, it is self contradictory and repugnant in that it permits a verdict for plaintiff because of his obliviousness *or* inextricability; that there is no evidence of obliviousness; and that plaintiff's evidence is to the effect that he saw the street car and, therefore, could not have been oblivious of his danger. Plaintiff's evidence was to the effect that both the driver and plaintiff last saw the car when it was thirty feet west of the intersection, at which time the truck was turning south. There was not sufficient evidence of obliviousness to justify submission of that issue; but the testimony did not positively disprove obliviousness of *danger*. There was evidence tending to prove that plaintiff was in an inextricable position; there was a foundation laid, if it had been followed by other testimony, of obliviousness, so that such an issue *might* have been proved; but the evidence is, in its present state, unsatisfactory on the question of whether or not plaintiff was, in fact, oblivious and, if so, whether or not the operator could have seen that plaintiff was oblivious of his danger. In the state of this record we think obliviousness should not have been submitted, although there is no testimony which positively disproves actual obliviousness.

Plaintiff contends that defendant may not raise any question concerning the correctness of this instruction on this appeal which it did not raise on the former appeal, and that, since the "tail" here considered was also attached to the instruction upon which the former judgment was reversed and remanded, and was not then criticised by defendant or by the court, it should not now be subject to attack. This is not the law. [Haynes v. Trenton, 123 Mo. 326, 335.] We did not, in our former opinion, consider any question except those raised on that appeal; and the law of the case applies only to such questions as were there ruled.

An erroneous instruction is regarded as prejudicial unless it affirmatively appears that it was not prejudicial. [Haynes v. Trenton, *supra*.]

The judgment should be reversed and the cause remanded. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.