[Cite as *State v. Eberhardt*, 2020-Ohio-4124.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA0111 |
| SCOTT E. EBERHARDT, JR | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No.
                             2019CR0495

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August18, 2020

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

GARY D. BISHOP                         GLORIA L. SMITH
Prosecutor                             670 Meridian Way #188
By: JOSEPH C. SNYDER                   Westerville, Oh 43082
Assistant Prosecutor
38 S. Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}   Defendant-appellant Scott E. Eberhardt, Jr. ["Eberhardt"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   In September 2018, Eberhardt's aunt, Susane Malone, was living at Colonial Hill Trailer Park at 741 Yale Avenue, Lot 2.  When she left that address and started living with her mother, Ms. Malone's son, Michael Kitts, would check on the property every other day.  Ms. Malone still had medicine, money, and electronics in the home.

{¶3}   At some point, Ms. Malone's car had stopped working.  She hired Eberhardt to repair it.  The car, which was un-drivable, was located at the home of Ms. Malone's mother.  Ms. Malone gave Eberhardt her car keys to enable him to work on her car.  The key ring also had a key to her home at Colonial Hill Trailer Park. Ms. Malone did not give Eberhardt permission to enter her home in the trailer park.  The only other people with a key to the home were her daughter and her son, Michael Kitts.

{¶4}   On September 29, 2019, Eberhardt drove his aunt over to her home at the trailer park so that she could pick up a pair of pants.  Eberhardt waited in the car as Ms. Malone went inside her home.  Afterwards, Eberhardt drove his aunt back to her mother's home.  Ms. Malone's had planned to stay the night at her mother's home.  Eberhardt was to come over the next day to finish working on Ms. Malone's car.  After dropping off Ms. Malone at the home of her mother, Eberhardt left with Ms. Malone's keys, which included keys to the car and keys to her trailer.

{¶5} Sometime between 10:00 p.m. and 11:00 p.m. on September 29, 2019, Mr. Kitts went to check on the home in the trailer park and do laundry. Mr. Kitts's girlfriend, Ashley Carter, and two children accompanied him, but remained in the car. Upon his arrival, Mr. Kitts found the screen door and the main door to Ms. Malone's home to be unlocked. When he went inside, Mr. Kitts could see his mother's big screen television was in the middle of the living room floor, unplugged. When Mr. Kitts had been in the home two days prior, the television was plugged-in on the T.V. stand.

{¶6} Mr. Kitts then walked to the front bedroom where he observed everything to be in order. However, when he looked back towards the kitchen doorway, he saw the shadow of someone in the kitchen. Mr. Kitts yelled out, "Who is it," three or four times; however, no one responded. He then ran into the kitchen and found Eberhardt. Eberhardt asked Mr. Kitts where was Ms. Malone. Eberhardt told Kitts that he was supposed to meet Ms. Malone at the house so she could give him thirty dollars. Eberhardt then asked Mr. Kitts if he could give him a ride home. Mr. Kitts agreed and then went to tend to his laundry. Having become suspicious, Mr. Kitts checked the back bedroom and found dresser drawers open. At that point, Mr. Kitts believed that Eberhardt was trying to steal from Ms. Malone. Mr. Kitts received a call from Ms. Carter who had been waiting in the van outside. She said that someone was coming out of the trailer. Ms. Carter told Mr. Kitts that Eberhardt was outside the house, talking on his phone.

{¶7} When Mr. Kitts walked outside, Eberhardt was gone. Mr. Kitts then called the police. Deputies from the Richland County Sherriff's Office arrived and began looking through the house. They found a book bag that belonged to Mr. Kitts' fifteen-year-old brother on the floor in the kitchen. This book bag would ordinarily be found in the back-

bedroom's closet. Mr. Kitts' brother had already moved out of the house and took everything he wanted with him. Inside the bag was a digital camera. The digital camera had been on a shelf in the back-bedroom's closet. The deputies found no evidence of forced entry.

{¶8} Deputy Burt Skeen later interviewed Eberhardt. Eberhardt admitted to having a key to Ms. Malone's trailer as it was on the key ring with the car key. During the interview, Eberhardt claimed that he was in the house just to wait on a ride. Later, the keys to Ms. Malone's car and her trailer were discovered in the yard of her mother's house.

{¶9} On June 24, 2019, Eberhardt was indicted by the Richland County Grand Jury with a single-count indictment. Counts One charged Eberhardt with Burglary in violation of R.C. 2911.12(A)(2)(d), a felony of the second-degree. At the conclusion of trial, the jury found Eberhardt guilty as charged.

{¶10} Eberhardt received a maximum sentence of eight years in prison after being found guilty by a jury of burglary in violation of R.C. 2911.12 (A)(2). Eberhardt had previously been convicted on a prior felony and was serving a prison sentence on that charge. The trial court imposed the sentence in this case consecutive to the sentence in the previous case.

*Assignments of Error*

{¶11} Eberhardt raises Four Assignments of Error,

{¶12} "I. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO DISCHARGE APPOINTED COUNSEL AND APPOINT NEW COUNSEL.

{¶14} "III. APPELLANT WAS DEPRIVED OF HIS RIGHT A. FAIR TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶15} "IV. THE SENTENCE IS CONTRARY TO LAW AND IS NOT SUPPORTED BY THE RECORD."

I.

{¶16} In his First Assignment of Error, Eberhardt argues that his conviction for Burglary is against the manifest weight of the evidence. Eberhardt also claims there is insufficient evidence to support his conviction.

**1. Standard of Appellate Review– Sufficiency of the Evidence.**

{¶17} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶18} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**1.1. Issue for Appeal**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Eberhardt's guilt on each element of the crime for which he was convicted beyond a reasonable doubt.*

{¶19} To be found guilty of Burglary, the jury would have to find beyond a reasonable doubt that Eberhardt trespassed in an occupied structure that is a permanent or temporary habitation when "any person is present or likely to be present" "with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2).

{¶20} Eberhardt first contends that because his aunt, Ms. Malone, gave him her key ring which contained both her car keys and her house keys and because she did not tell him that he did not have permission to use the key to her trailer he did not "trespass." [Appellant's brief at 5].

**1.1.1. Trespass**.

{¶21} A person trespasses when the person knowingly enters or remains on the land or premises of another without privilege to do so. R.C. 2911.21(A)(1).

{¶22} Ms. Malone testified that Eberhardt was given the key ring so that he could work on her car. (2T. at 315-316). The car was located at the residence of Ms. Malone's mother, which is where Ms. Malone was staying. (2T. at 321). Ms. Malone testified that Eberhardt did not have permission to go into her trailer. (2T. at 323). She further testified that she had not agreed to meet Eberhardt at the trailer to give him money. (2T. at 324-325).

{¶23} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Eberhardt trespassed in Ms. Malone's trailer. We hold, therefore, that the state met its burden of production regarding the element of trespass for the crime of burglary and, accordingly, there was sufficient evidence to support Eberhardt's conviction.

**1.1.2. Habitation and "Likely to be Present."**

{¶24} Eberhardt next argues that the state failed to prove beyond a reasonable doubt that Ms. Malone's trailer was a "habitation" and, further, did not prove beyond a reasonable doubt that someone was likely to be present at the trailer. [Appellant's brief at 5-6].

{¶25} Clearly, Ms. Malone had been living exclusively at the trailer. No evidence was presented that the trailer was not inhabitable. The trailer still held many of Ms. Malone's personal effects and property.

{¶26} In *State v. Stevens*, this Court held,

A person is present or likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present. *State v. Green* (1984), 18 Ohio App.3d 69, 72. The knowledge of the defendant concerning habitation is not significant; the focus is on the probability of actual occupancy at the time of the offense. *State v. Durham* (1976), 49 Ohio App.2d 231, 239.

Thus, evidence that the occupant was living elsewhere, but returned regularly to make repairs, clean, and remove remaining items of personal property was sufficient to support a conviction of Aggravated Burglary. *Green*, 18 Ohio App.3d at 72. Evidence that a family occupying a residence was in and out of the home on the day in question was sufficient to support a conviction, although no one was present when the crime occurred. *State v. Kilby* (1977), 50 Ohio St.2d 21, at paragraph one of the syllabus. However, evidence was insufficient to support an aggravated burglary conviction where one person occupied an apartment, and the crime occurred during his ordinary working hours. *Durham*, 49 Ohio App.2d at 239-40.

5th Dist. Muskingum No. 93-30, 1994 WL 171808(Mar. 22, 1994).

{¶27}   In the case at bar, Mr. Kitts testified that his mother, Ms. Malone, was in the process of moving out of the trailer. (2T. at 270). Mr. Kitts would go to check on the trailer every other day. (2T. at 270; 303-304).  Ms. Malone had been at the trailer earlier on the day of the incident. (2T. at 322).

{¶28}   Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Eberhardt trespassed in a habitation at a time someone was likely to be present.  We hold, therefore, that the state met its burden of production regarding the elements of habitation and person likely to be present and, accordingly, there was sufficient evidence to support Eberhardt's conviction.

**1.2. Standard of Appellate Review – Manifest Weight.**

{¶29}   As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶30} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶31} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**1.2.2. Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶32} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶33} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw Mr. Kitts and Ms. Malone subject to cross-examination. The jury heard Eberhardt's attorney's arguments and explanations about the evidence and his actions. Thus, a rational basis exists in the record for the jury's decision.

{¶34} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Eberhardt's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Eberhardt's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Eberhardt of the offense.

{¶35} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Eberhard was convicted.

{¶36} Eberhardt's First Assignments of Error is overruled.

II.

{¶37} In his Second Assignment of Error Eberhardt contends the trial court erred by not allowing him to discharge his court-appointed counsel.

**2. Standard of Appellate Review.**

{¶38} "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.' "

*State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999), ¶148, *quoting United States v. Iles*, 906 F.2d 1122, 1130(6th Cir. 1990). The trial court may deny the request to substitute counsel if the complaint is unreasonable. *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742(1969), syllabus. The trial court's decision is reviewed under an abuse-of-discretion standard. *Cowans*, 87 Ohio St.3d at 73, 717 N.E.2d 298.

**{¶39}** An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

**2.1. Issue for Appellate Review**: *Whether the trial court's decision denying Eberhardt's request to discharge court-appointed counsel and to assign new counsel is clearly untenable, legally incorrect, amounted to a denial of justice, or reached an end or purpose not justified by reason and the evidence.*

**{¶40}** Eberhardt asked the trial court to discharge appointed counsel and to appoint new counsel on the day of trial, prior to jury selection. The trial court conducted an inquiry into Eberhardt's assertions concerning appointed counsel. (1T. at 1-34). Eberhardt's attorney denied Eberhardt's assertions and indicted that he was prepared to proceed to trial on Eberhard's behalf,

> MR. WATSON: Yes. Thank you very much, Your Honor. May it please the court. My client has brought up numerous areas of concern, none of which are true. I have had several jail visits with my client. I have

explained to him in detail all of the evidence in the case. I will tell you that in all of the contacts that I have had with my client-- and there have been multiple, at least four – at no time has my client ever advised me that he had a witness. He has never communicated that to me in any way, shape or form. What I had left was the information provided to me by the state, all of which was shared in detail with my client.

The court would recall, the state was kind enough to have one of its key witnesses present in the courtroom to ensure my client understood that that person was going to testify about certain jail phone calls that were made, and I let my client know that that entire conversation, which was an attempt to get her to testify in a way that he thought would exonerate him, wasn't going to happen. And he just would not be heard on that particular subject.

Now, as for my ability to represent him, Your Honor, I stand ready to go. I am fully prepared for this trial. I can represent him. He will get a vigorous defense within the bounds of the law and ethics. But unless there is something that my client failed to communicate to me, it's out of my hands.

But as it stands at this moment, he had all of the knowledge that I had concerning his case. There was an offer. He refused it. There is no other alternative but then to take it to trial. I understand his theory of the case. He has explained it to me on more than one occasion. We just happen

to disagree as to how successful that strategy is going to be. He insists to try it. So that's why we are here.

1T. at 32.  The trial judge noted,

THE COURT: The court would indicate it has gone on at least 8, 9 months at this point in time.

And, Mr. Eberhardt, I did indicate to you that we did discuss this case. You did not want to take this. We wrapped up the other three portions of your cases. You refused to take this one.

MR. EBERHARDT: Right.

THE COURT: The evidence at that time was discussehad. [sic.] Right? So it's not like this hit you blindsided and you don't know what was presented. Everything was presented to you at that time. It's just the fact this was pending, hadn't been indicted yet, could have gone on a Bill of Information. You did not want to go on a Bill of Information on this charge and you refused it. So, ultimately, that's why we were there. All of the evidence was bared at that point in time. There was nothing that was left untouched. All that was left was to get this matter indicted at that point, since you didn't want the deal.

This is where we are at. Now you came back. Mr. Watson worked out as good a deal as he possibly could based on that after the indictment. Again, you were brought in. You didn't want that deal. And Mr. Watson knows what the evidence is. The court knows what the evidence is. You

know what the evidence is. And the state knows what the evidence is. It was discussed during that pretrial.

1T. at 15-16.The trial judge concluded,

THE COURT: All right. We are back on the record in this matter. The court has had an opportunity to listen to the arraignment that was conducted. The court will indicate that at no time did the defendant in this matter ever state that he did not want Mr. Watson. It's on recording. Simply appointed Mr. Robinson. At no time ever did you say you do not want Mr. Watson.

Mr. Eberhardt, the court at this time doesn't find your argument for new counsel persuasive. This matter has been pre-tried. It has been pending since early February. These were all contemplated. This new case that we are dealing with today was even included in those discussions. For you to say that it comes as a surprise afterwards that you did not know what was coming, is not true. You had an offer. If you had taken everything, I believe it was 6 (six) years with this case, but you didn't do that. You did not do that. You rolled the dice. So they proceeded to indict. This is where we are at.

The court also finds that the last time you played this all of the way up until the day the jury was brought in. We had to bring the jury in because you demanded a trial, and then all of a sudden you decided, wait, let's work out a deal. We did that the last time.

Now we have another jury and you are trying to prolong it once again to get some kind of a deal on the table. You have known this deal all along. You indicated you didn't. It went from a combined 6 (six) years, the court will note for the record, on all cases, including this one, to you pleading to the other case, at which time this case now once it was indicted went to 4 (four) years on this case. You refused that deal. You were set for trial. At no time along that process did you ever request new counsel until this morning. This morning. The day of trial. When a jury is here now. The court is not going to grant your request for new counsel.

1T. at 35-36.

{¶41} The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(9183); *State v. Blankenship*, 102 Ohio App.3d 534, 657 N.E.2d 559; *State v. Burroughs*, 5th Dist. No. 04CAC03018, 2004-Ohio-4769 at ¶ 11.

{¶42} In *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298(1999) the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. But disagreements—such as disagreement over the merits of a plea offer—"'between the attorney and client over trial tactics or approach * * * do not warrant a substitution of counsel.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 150, *quoting State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, 792 N.E.2d 757, ¶ 32 (7th Dist.). To the contrary, counsel "'has a duty to be candid' " and "'to

give the accused an honest appraisal of his case.' " Id. at ¶ 151, *quoting Brown v. United States,* 264 F.2d 363, 369 (D.C.Cir.1959). *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 71. . "'A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" *Brown v. United States*, 264 F.2d 363, 369 (D.C. Cir. 1959) (en banc) (Berger, J. concurring), *quoted in McKee v. Harris*, 649 F.2d 927, 932(2nd Cir 1981). "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" *McKee,* 649 F.2d at 932, *quoting McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869.

{¶43} In the case at bar, it appears that Eberhardt's dissatisfaction with his attorney stems in considerable part from counsel's failure to paint a rosy picture concerning Eberhardt's prospects for complete exoneration after a jury trial.

{¶44} In a similar vein it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. *See State v. Henness*, 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686(1997). Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure*, 132 Ohio App.3d 227, 239, 724 N.E.2d 1165(1999); *State v. Evans*, 153 Ohio App.3d 226, 235-36, 2003-Ohio-3475 at ¶31, 792 N.E.2d 757,764; *State v. Newland*, 4th Dist. No. 02CA2666, 2003-Ohio-3230, ¶11.  A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d

996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller* 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008, ¶ 21.

{¶45} In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. Eberhardt has not established that such a breakdown occurred to warrant appointment of new counsel. Indeed, our review of the record indicates Eberhardt's counsel was thoroughly prepared. In the case at bar, defense counsel apparently gave Eberhardt his honest appraisal of his case, which does not prove bias or lack of communication.  Eberhardt has failed to establish a breakdown in attorney-client relationship of such magnitude as require the trial court to discharge his court-appointed attorney.

{¶46} In the case at bar, the trial court did not abuse his discretion by failing to discharge court appointed counsel and appoint Eberhardt new trial counsel.  The court conducted a hearing and Eberhardt's appointed counsel assured the court that he was prepared to proceed with the scheduled jury trial.  The trial court's decision was not clearly

untenable or legally incorrect, did not amount to a denial of justice, or reached an end or purpose not justified by reason and the evidence.

{¶47} Eberhardt's Second Assignment of Error is overruled.

III.

{¶48} In his Third Assignment of Error, Eberhardt argues that he was denied effective assistance of counsel. Specifically, Eberhardt contends that his trial attorney was ineffective in failing to subpoena witnesses, failing to make timely evidentiary objections, and by opening the door for the prosecution to present evidence that was prejudicial and not relevant.

**3. Standard of Appellate Review.**

{¶49} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881 (June 15, 2020).

**3.1 Failure to subpoena witnesses.**

{¶50} Eberhardt first indicated on the day of trial, that he wished to call his girlfriend, Toni Thompson, and that she would testify that he walked to Ms. Malone's trailer. 1T. at 8. Eberhardt fails to elucidate or proved any cognizant rationale concerning

how his manner of arrival at the trailer on the day in question would have changed the outcome of his trial.

{¶51} On the second day of trial, Eberhardt stated that he wanted his mother to testify. 2T. at 410. Eberhardt contends that his mother would testify that Ms. Malone was no longer living at her trailer on the day of the incident, and that she gave Eberhardt permission to be inside her trailer on that day. 2T. at 414.

{¶52} In *State v. O'Brien*, the homeowner was temporarily living in a domestic violence shelter at the time of the incident. 5th Dist. Stark No. 2004CA00370, 2005-Ohio-3765, ¶16. While she was at the shelter on the day of the offense, her furniture and personal belongings remained in the house. In *O'Brien* this court observed,

Ms. Brown had left all of her belongings, secured the house, and turned off the gas, but it was summer time. T. at 53–55. Although she had been in the shelter for two weeks, she went back to her home to retrieve some items. T. at 56–57. She always intended to return once her ex-husband was arrested. T. at 61, 64. Ms. Brown's children attended school within a fifteen-minute walking distance from the house however, as previously noted, it was summer time. T. at 62. Mr. Brown stated the only time she would not have returned to her home would have been at darkness because of her fear of her ex-husband. T. at 63–64.

From the totality of the evidence, we find the facts are sufficient to meet the burden of "likely to be present." In State *v. Holt* (1969), 17 Ohio St.2d 81, 86, 246 N.E.2d 365, the Supreme Court of Ohio has defined "likely" as follows:

"In the case of *Robards v. Kansas City Public Service Co.*, 238 Mo.App. 165, 170, 177 S.W.2d 709, 712, it is said in the opinion:

"'* * * that the word "likely" is not equivalent to the words "reasonably certain"; that "reasonably certain" is a stronger expression than the word "likely."'

"It has also been held that in law 'likely' means something less than 'probable.' *Conchin v. El Paso & Southwestern Rd. Co.*, 13 Ariz. 259, 264, 108 P. 260, 262, 28 L.R.A.,N.S., 88, 91, and *Blaine v. State*, 196 Miss. 603, 609, 17 So.2d 549, 550. *Compare Howard v. State*, 108 Ala. 571, 577, 18 So. 813, 816, where it was held that charges using the words 'likely' and 'likelihood' as a substitute for 'probable' and 'probability' were properly refused to avoid misleading and confusing the jury."

Further, in *State v. Green* (1984), 18 Ohio App.3d 69, 72, 480 N.E.2d 1128, our brethren from the Tenth District found a person "is likely to be present when a consideration of all the circumstances would seem to justify a legal expectation that a person could be present."

It was likely that Ms. Brown would return to her home to retrieve items as she had done before or she would return permanently after the apprehension of her ex-husband.

5th Dist. Stark No. 2004CA00370, 2005-Ohio-3765, ¶16-¶22.

{¶53} Similarly, in *State v. Hudson,* the Court held,

In this case, Lucy testified that she began moving from the upper apartment to the lower apartment in December 2016, and that she was

residing in the lower apartment on January 8, 2017, the day of the burglary. Lucy worked during the day as a provider of home healthcare, and she returned to her residence around 8:45 p.m. At that time, Lucy found indications that a person was in her apartment, namely that the deadbolt to the front door was locked. When she entered the apartment an hour later, she found Hudson asleep on her couch in the front living room. The State's evidence was sufficient to establish that Hudson trespassed in Lucy's residence at a time when a person (other than Hudson or an accomplice) was present and/or was likely to be present. The fact that Hudson may have subjectively and perhaps reasonably believed, based on the condition of the property, that the lower apartment was abandoned was of no legal import.

2nd Dist. No. 27561, 2018-Ohio-423, ¶19. In *State v. Hibbard,* the court found sufficient evidence that a person was likely to be present where a homeowner was away,

However, McDullin testified that she had arranged for someone to stop in regularly to check on their cat in the family's absence, and that person discovered the break-in. This evidence is sufficient to support the "likely to be present" element of appellant's burglary conviction on this count.

12th Dist. Butler Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶13.

{¶54} In the case at bar, Ms. Malone had gone to the trailer on the day of the incident to retrieve a pair of pants. Inside the trailer was her clothing, medicine, television and other electronic devices. Mr. Kitts regularly checked on his mother's trailer. Eberhardt

did not answer or present himself when Mr. Kitts called out inside the trailer. Eberhardt asked Mr. Kitts for a ride, then walked outside and disappeared.

{¶55} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749(2001); *State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, ¶ 82. Eberhardt's claim with respect to both performance and prejudice rests on mere speculation, and "[s]uch speculation is insufficient to establish ineffective assistance." *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 119, citing *State v. Perez*, 124 Ohio St.3d 122, 2009–Ohio–6179, 920 N.E.2d 104, ¶ 217; *State v. Were,* 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, ¶ 219; *State v. Elmore,* 111 Ohio St.3d 515, 2006–Ohio–6207, 857 N.E.2d 547, ¶ 121. We already found in our disposition of Eberhardt's First Assignment of Error that his convictions are not against the manifest weight and sufficiency of the evidence.

{¶56} We are unwilling to speculate the outcome of the trial would have been different but for failing to call Eberhardt's girlfriend or his mother as a witness, and therefore find Eberhardt did not receive ineffective assistance of counsel. *See, State v. Ducker*, 5th Dist. Stark No. 2012CA00193, 2013–Ohio–3658; *State v. Poulton*, 5th Dist. Muskingum No. CT2013–0030, 2014–Ohio–1198, *appeal not allowed*, 2014–Ohio–2487, 139 Ohio St.3d 1420, 10 N.E.3d 739; *State v. Burnett,* 5th Dist. Stark No. 2017CA0005, 2017-Ohio-7522, ¶28.

**3.2. Failing to properly object.**

{¶57} Eberhardt next argues that his trial attorney failed to properly object when the prosecutor elicited testimony from Ms. Malone, Ms. Carter, and Detective Skeen about statements Mr. Kitts had made to each of them.   [Appellant's Brief at 12-13]. Eberhardt also contends that his trial counsel failed to object to prejudicial evidence elicited from Detective Skeen concerning Ms. Malone's fears about the burglary. [Appellant's Brief at 13-14].

{¶58} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'"  *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136(1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988).  A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.  *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008–Ohio–3426, 892 N.E.2d 864, ¶ 233.

{¶59} A defendant has no constitutional right to determine trial tactics and strategy of counsel.  *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); State *v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 150; State *v. Donkers*, 170 Ohio App.3d 509, 2007–Ohio–1557, 867 N.E.2d 903(11th Dist.), ¶ 183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant.   Id.   Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id.  "[P]oor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *."  *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189(1980)(quoting *United States v. Denno*, 313 F.2d 364(2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143. In addition, to fairly assess

counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶60} Crim. R. 52(A) defines harmless error, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).

{¶61} Mr. Kitts testified and was subject to cross-examination. Accordingly, the testimony elicited from the other witnesses was cumulative. Trial counsel may have made a tactical decision not to object and call further attention to the statements. As the substance of the statements was admissible and testified to by Mr. Kitts we find there is no reasonable possibility that this testimony as elicited from the other witnesses contributed to Eberhardt's conviction, and any error, therefore is harmless beyond a reasonable doubt.

{¶62} Testimony concerning Ms. Malone's fears did not implicate Eberhardt in the crime. It was not so highly inflammatory and was not directed to the passions and prejudice of the jury. We find it extremely speculative that the jury abandoned their oaths and their integrity and found Eberhardt guilty of the crime because of the testimony

concerning Ms. Malone's fears. As the substance of the testimony concerning Ms. Malone's fears, we find there is no reasonable possibility that this testimony contributed to Eberhardt's conviction, and any error, therefore is harmless beyond a reasonable doubt.

**3.3. Evidence that Eberhardt had been arrested and was in jail for a different offense.**

{¶63} Eberhardt next argues that his trial attorney was ineffective in allowing the jury to hear that Eberhardt had been arrested and was in jail for a different burglary offense.

{¶64} On cross-examination of Detective Skeen, Eberhardt's attorney brought out the fact that Eberhardt had been arrested in early November 2018, that he had not been arrested the day of the burglary in this case, and further had not been arrested by the Richland County Sheriff's office. 2T. at 402. The reason for the arrest was not mentioned.

{¶65} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio–171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "[P]oor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189(1980) (*quoting United States v. Denno*, 313 F.2d 364(2nd Cir.1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶66} Testimony of Eberhardt's arrest and jailing on other unspecified charges was not so highly inflammatory and was not directed to the passions and prejudice of the

jury. It is highly speculative to conclude that the jury abandoned their oaths and their integrity and found Eberhardt guilty of the crime because of this testimony. We find there is no reasonable possibility that this testimony contributed to Eberhardt's conviction, and any error, therefore is harmless beyond a reasonable doubt.

### 3.4. Improper comments in closing argument[1].

{¶67} Eberhardt next contends that the prosecutor argued to the jury that the key to Ms. Malone's trailer was "stolen." 2T. at 475-476. Although the evidence is that Ms. Malone had given a key ring to Eberhardt that contained her car key and the key to her trailer, the evidence also demonstrates that Eberhardt did not give the key ring back to Ms. Malone. 1T. at 323. Ms. Malone further testified that Eberhard's grandmother found the keys in the yard of Ms. Malone's mother's house. 1T. at 323.

If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743,

---

[1] Eberhardt raises this claim of prosecutorial misconduct under his Assignment of Error contending that he received ineffective assistance of counsel. *See*, App.R. 16.

2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist.2011), citing State v. Williams, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988). *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 109.

In the case at bar, we find that the trial judge issued thorough instructions that included informing the jury that the court instructs on the law, not the attorneys. 2T. at 421; 476-477. The trial court further instructed the jury that the statements of counsel are not to be considered as evidence. Id.

{¶68} Looking at the prosecutor's statement in the larger context of the trial, we find the prosecutor's statement did not prejudicially affect Eberhardt's substantial due process rights. We find there is no reasonable possibility that the statements by the prosecutor contributed to Eberhardt's conviction, and any error, therefore is harmless beyond a reasonable doubt.

**3.5. Comments on Eberhardt's right to not testify during trial[2].**

{¶69} Eberhardt argues the prosecutor impermissibly commented on the fact that Eberhardt did not testify. As his sole support for this argument, Eberhardt cites the following,

> And I agree there are a lot of questions. But not quite the same questions. I would love to know what drives a man to take from his aunt, to fix her car, tear her car apart and then not to repair it. I would love to know what makes a person go into somebody else's house and gather goods that are not theirs.

2T. at 424.

---

[2] *See* Note 1, *supra.*

{¶70} A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

{¶71} The state may comment upon a defendant's failure to offer evidence in support of its case. *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118(2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.

{¶72} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." *State v. Petro*, 148 Ohio St. 473, 498, 162, 76 N.E.2d 355, 367(1948); *State v. Champion*, 109 Ohio St. 281, 289-290, 142 N.E. 141, 143-144(1924). *State v. D'Ambrosio*, 67 Ohio St.3d 185, 193, 1993-Ohio-170, 616 N.E.2d 909,916(1993).

{¶73} Eberhardt mischaracterizes the prosecutor's statement. The prosecutor was commenting on the lack of evidence and not on the fact that Eberhardt had not testified. The prosecutor's comments focused on what was presented in evidence. Further, the trial court instructed the jury that Eberhardt had a constitutional right not to testify and the jury must not consider the fact that he did not testify for any purpose. 2T. at 423. We presume that the jury followed the court's instructions. *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082(1994).

{¶74} We find that the language used by the prosecutor in this case is not such that the jury would "naturally and necessarily" take it as comment on the failure of the accused to testify, and thus fails the test set forth in *State v. Cooper*, 52 Ohio St.2d 163, 370 N.E.2d 725(1977), *vacated on other grounds* 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157(1978). *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906, 911(1986).

**3.6. Conclusion.**

{¶75} For all the forgoing reasons, Eberhardt's Third Assignment of Error is overruled.

IV.

{¶76} In his Fourth Assignment of Error, Eberhardt contends that his eight- year sentence is contrary to law and is not supported by the record. Specifically, Eberhardt contends that although his sentence does not exceed the authorized statutory range, the trial court did not comply with the purposes and principles of felony sentencing as set forth in R.C. 2929.11 and R.C. 2929.12. Therefore, the sentence is contrary to law and the case should be remanded back to the sentencing court.

**4. Standard of Appellate Review.**

{¶77} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶78} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while   R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences. ___ Ohio St.3d ___, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

{¶79} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under  R.C. 2929.13(B) or  (D),  2929.14(B)(2)(e) or  (C)(4), or  2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶80} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus. *See* also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**4.1. R.C. 2929.11 and R.C. 2929.12 and Maximum Sentences.**

{¶81}   A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12.  *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016–Ohio–5234, ¶ 10, 16; State *v. Taylor,* 5th Dist.  Richland No. 17CA29, 2017-Ohio-8996, ¶16.

{¶82}   R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing, which are (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders."  R.C. 2929.11(B).

{¶83}   R.C. 2929.12 sets forth the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11.  R.C. 2929.12 is a guidance statute that sets forth the seriousness and recidivism criteria that a trial court "shall consider" in fashioning a felony sentence.  Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense.  These factors include the physical or mental injury suffered by the victim due to the age of the victim; the physical, psychological, or economic harm suffered by the victim; whether the offender's relationship with the victim

facilitated the offense; the defendant's prior criminal record; whether the defendant was under a court sanction at the time of the offense; whether the defendant shows any remorse; and any other relevant factors. R.C. 2929.12(B). The court must also consider any factors indicating the offender's conduct is less serious than conduct normally constituting the offense, including any mitigating factors. R.C. 2929.12(C). Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes.

{¶84} In *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, the court discussed the effect of the *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470 decision on felony sentencing. The court stated that in *Foster* the Court severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Kalish* at ¶ 1 and ¶ 11, *citing Foster* at ¶ 100, *See also, State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823.

{¶85} "Thus, a record after *Foster* may be silent as to the judicial findings that appellate courts were originally meant to review under 2953.08(G)(2)." *Kalish* at ¶ 12. However, although *Foster* eliminated mandatory judicial fact-finding, it left intact R.C. 2929.11 and 2929.12, and the trial court must still consider these statutes. *Kalish* at ¶ 13, *see also State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1; *State v. Firouzmandi* supra at ¶ 29.

{¶86} Thus, post-*Foster,* "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Foster* at ¶ 42. *State v. Rutter*, 5th Dist. No. 2006–CA–0025, 2006–Ohio–4061; *State v. Delong,* 4th Dist. No. 05CA815, 2006–Ohio–2753 at ¶ 7–8. Therefore, post-*Foster*, trial courts are still required to consider the general guidance factors in their sentencing decisions.

{¶87} There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Polick*, 101 Ohio App.3d 428, 431(4th Dist. 1995); *State v. Gant*, 7th Dist. No. 04 MA 252, 2006–Ohio–1469, at ¶ 60 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), *citing State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94(1992); *State v. Hughes*, 6th Dist. No. WD–05–024, 2005–Ohio–6405, ¶ 10 (trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable in this case), *State v. Woods*, 5th Dist. No. 05 CA 46, 2006–Ohio–1342, ¶ 19 ("... R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors") (citations omitted); *State v. Taylor,* 5th Dist. Richland No. 17CA29*,* 2017-Ohio-8996, ¶23. In *State v. Bump,* this Court observed,

> The failure to indicate at the sentencing hearing the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal. *State v. Reed,* 10th Dist. No. 09AP–1163, 2010–Ohio–5819, ¶ 8. "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper

consideration to those statutes." Id., *citing Kalish* at ¶ 18, fn. 4. "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000–Ohio–302.

5th Dist. Ashland No. 11-COA-028, 2012-Ohio-337, ¶12.

{¶88} In the case at bar, the trial court noted the following,

THE COURT: You have done these crimes. You have done these crimes. It goes back. As a juvenile: Sexual imposition, four counts, along with receiving stolen property. You were sent to the Department of Youth Services for 18 (eighteen) months, 6 (six) months on receiving stolen property. Shortly thereafter you were also charged with felony burglary as a juvenile, and you had a probation violation, once again delivered to the Department of Youth Services.

Mr. Eberhardt, again, as an adult, you have a burglary, a fourth degree felony out of this county. You have an aggravated robbery, an aggravated burglary. You have a weapon while under disability. You had another aggravated robbery, a firearm specification, two counts. One was dismissed in order to plea. You did a substantial time in prison.

Again you had a burglary, a theft, improperly handling a firearm in a motor vehicle, a failure to appear, a felony aggravated burglary.

And in this court just last, well, earlier this year, you had a possession of cocaine, a burglary, a theft, endangering children and an escape. We

sat through those pretrials of all of the three cases that I just indicated, the last three: burglary, possession of cocaine, the escape; and with this case contemplated, you were offered 6 (six) years flat.  You refused to take this burglary charge.  And they were not even going to ask to have the Post Release Control time imposed.  *You were on Post Release Control when you committed those three crimes along with this.  That's four felonies while on Post Release Control.*

You haven't behaved once.  You have probation violations.  You violated on you PRC, committing new crimes.  And all of this time you are asking the court to feel sorry for you, not once did I hear an apology to the victim in this case, not once.  Not once did you say, I am sorry for victimizing my aunt; not, I'm sorry I had a drug addiction and I took advantage of you.  Not once did I hear, I am sorry.  You want the court to show mercy on you, yet you show no mercy on your victim.

2T. at 501-503, emphasis added.

{¶89}  Accordingly, the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when determining an appropriate sentence.  [R.C. 2929.12].  The trial court has no obligation to state reasons to support its findings.

{¶90}  Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range.   Furthermore,  the  record  reflects  that  the  trial  court considered the purposes and principles of sentencing and the seriousness and recidivism

factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code.  While Eberhardt may disagree with the weight given to these factors by the trial judge, Eberhardt's sentence was within the applicable statutory range  and therefore, we have no basis for concluding that it is contrary to law.

{¶91}  Eberhardt has failed to clearly and convincingly show that the trial court failed to consider the principles of felony sentencing, or that the maximum sentence is otherwise contrary to law.

**4.2 Consecutive sentences.**

{¶92}  Eberhardt further argues that the record does not support running the sentence in the present case consecutively to a sentence he is already serving.

{¶93}   As the Ohio Supreme Court noted in *State v. Gwynne,* ___ Ohio St.3d ___, 2019-Ohio-4761,

> Because  R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under  R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended   R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences.  *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").
>
> While  R.C.  2953.08(G)(2)(a)  clearly  applies  to  consecutive-sentencing review, R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences.

2019-Ohio-4761, ¶¶16-17(emphasis in original).

{¶94} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See* Id. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." Id.

**4.2.1. ISSUE FOR APPEAL:** *Whether the trial court properly imposed consecutive sentences in Eberhardt's case.*

{¶95} R.C. 2929.14(C)(4) provides,

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of

the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶96} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

{¶97} In this case, the record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶98} In the case at bar, the trial court made this finding on the record and in its sentencing entry.

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶99} The trial court found that Eberhardt committed the offense in the case at bar while on Post Release Control. The trial court made this finding on the record and in its sentencing entry

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

{¶100} In the case at bar, the trial court made this finding on the record and in its sentencing entry.

**4.2.2. ISSUE FOR APPEAL:** *Whether the trial court's decision to impose consecutive sentences in Eberhardt's case is supported by the record.*

{¶101} According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. at ¶29. The plurality of the Ohio Supreme Court in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See,* 2019-Ohio- 4761, ¶18.

{¶102} Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Further, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C) (4). Therefore, we have no basis for concluding that it is contrary to law.

**4.3. Conclusion.**

{¶103} Eberhardt's Fourth Assignment of Error is overruled.

{¶104} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur